**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: September 26 2014

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In Re: | Case No.: 13-31005 |
| Fremont Hospitality Group, LLC, | Chapter 7 |
| Debtor. | Adv. Pro. No. 13-3127 |
| Ericka S. Parker, Chapter 7 Trustee, | Hon. Mary Ann Whipple |
| Plaintiff, | |
| v. | |
| Annie Kolath, | |
| Defendant. | |

### MEMORANDUM OF DECISION AND ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on the parties' cross motions for summary judgment [Doc. ## 36, 39], their opposition to the respective motions [Doc. ## 40, 41], and their replies [Doc. ## 45, 46]. Plaintiff is the Trustee in the underlying Chapter 7 case. In her complaint, the Trustee seeks an order disallowing the claim filed by Defendant Annie Kolath in the underlying case (Count I), and avoiding the transfer of a note and mortgage by Debtor to Kolath as fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) and (B) (Counts II and III), and, pursuant to 11 U.S.C. § 544(b), as fraudulent transfers under Ohio Revised Code § 1336.04(A)(1) and (2) and 1313.56 (Counts IV, V, and VII), and as preferential transfers under Ohio

Revised Code § 1313.56.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the disallowance of claims against the bankruptcy estate and to determine and avoid preferences and fraudulent conveyances are core proceedings. 28 U.S.C. § 157(b)(1) and (b)(2)(B), (F), and (H). Because each of the Trustee's claims are claims that "would necessarily be resolved in the claims allowance process," they are claims that the court has constitutional authority to hear and determine. *Stern v. Marshall,* 131 S. Ct. 2594, 2618 (2011) (explaining that in determining a bankruptcy court's constitutional authority to hear and determine a claim, "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process"); *see Waldman v. Stone,* 698 F.3d 910, 919 (6th Cir. 2012) ("When a debtor pleads an action under federal bankruptcy law and seeks disallowance of a creditor's proof of claim against the estate . . . the bankruptcy court's authority is at its constitutional maximum.").

Having considered the Motions and the parties' briefs, for the reasons that follow, the court will grant the Trustee's motion for summary judgment as to Count I and deny the motion as moot as to the remaining counts, and will deny Kolath's motion for summary judgment as to Count I and deny the motion as moot as to the remaining counts.

## FACTUAL BACKGROUND

Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 15, 2013. [Case No. 13-31005].[1] On August 21, 2013, Plaintiff was appointed as a Chapter 11 trustee. [*Id.*, Doc. # 125]. The case was converted to Chapter 7 on November 5, 2013, and Plaintiff was appointed as Chapter 7 trustee ("Trustee"). [*Id.*, Doc. # 306].

The following facts are not in dispute. Debtor is a limited liability company whose assets include a hotel and conference center located at 3422 Port Clinton Road, Fremont, Ohio ("the Property"). [*Id.*, Doc. # 396, Kolath Depo. Tr., pp. 8-9]. Debtor's sole member was Mathai Kolath George (Mr. Kolath), who died in a plane crash in June of 2009. The sole member is now Mr. Kolath's probate estate ("Probate Estate").

---

[1] The court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

2

[*Id.* at 8]. Defendant Annie Kolath ("Kolath"), his widow, was executrix of the Probate Estate until March 19, 2013, when she was removed as executrix by the New York Surrogate Court ("New York Court"). [*See* Trustee's Aff., Doc. # 37, Ex. U].

On or about January 5, 2007, Debtor and its affiliate, Port Clinton Hotels, Inc.,[2] obtained two loans from Citizens Bank in connection with the purchase of the Property: one in the amount of $2,900,000 and one in the amount of $1,015,000. [*See id.* at Exs. C & G; Doc. # 46, Exs. A & D, Doc. # 38, Ex. A]. Both loans were secured by mortgages on the Property. [*See* Doc. # 37, Exs. K & L]. Both Mr. Kolath and Kolath, using the name Sajimol George that she formerly used in India, signed personal guaranties ("Guaranties") in connection with each of the loans. [*See* Doc. # 46, Exs. B, C, E & F; Case No. 13-31005, Doc. # 396, p. 313-14].

The Guaranties, all of which contain identical language, define the "Obligor" of the loans being guaranteed to include Debtor and Port Clinton Hotels, Inc. [*See* Doc. # 46, Exs. B, C, E & F at ¶ 1]. They provide that they are "an absolute, unconditional and continuing guarantee the Guarantor being jointly and severally liable with the Obligor and is in no way conditioned upon any requirement that Lender first attempt to collect payment . . . from Obligor or any other obligor or guarantor. . . ." [*Id.* at ¶ 2]. The Guaranties provide that the Guarantor waives specific defenses to enforcement of the Guaranties, including "all defenses based on suretyship or impairment of collateral." [*Id.* at ¶ 14]. In addition, the Guaranties provide as follows:

> 15. Guarantor waives its rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to the Guarantor.
> . . . .
> 21. As further consideration for the loan(s) . . . and as a material inducement to Lender to make or enter into the loans(s). . .and accept this Guaranty, . . . Guarantor hereby irrevocably waives, disclaims and relinquishes any and all claims, rights or remedies which Guarantor may now have or hereafter acquire against Obligor that arise in connection with this Guaranty and/or performance by Guarantor hereunder, including without limitation any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, . . .whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.

[*Id.* at ¶¶ 15, 21]. The Guaranties further provide that they are governed by the laws of the State of Ohio. [*Id.* at ¶ 24].

---

[2] Port Clinton Hotels, Inc., also owned by Mr. Kolath, operated the hotel on Debtor's property until May 15, 2012. [Case No. 13-31005, Doc. # 396, p. 9, lines 8-13, p. 15, lines 14-20].

3

Also in connection with the acquisition of the Property, Mr. Kolath granted Citizens Bank a collateral assignment of two life insurance policies on his life with William Penn Life Insurance Company of New York and West Coast Life Insurance Company. [Doc. # 38, ¶¶ 4-5 and attached Exs. B & C]. Those policies, however, had either expired or had been terminated, [*see* Doc. # 39, p. 5, n.1], and, on March 18, 2009, Mr. Kolath had granted a collateral assignment of a $5 million Prudential life insurance policy to Citizens Bank, [Doc. # 46, Ex. G]. Kolath was the beneficiary of the policy. [*See* Doc. # 37, Ex. P, p. 2].

At the time of Mr. Kolath's death, the two loans were in default and over $3.9 million was owed to Citizens Bank. [Doc. # 39, p. 4]. In September 2009, Prudential distributed $3,956,502.67 of the life insurance proceeds to Citizens Bank and Citizens Bank released the two mortgages. [*See* Doc. # 37, Exs. P, Q & R]. The balance of the proceeds was distributed to Kolath. [*See id.,* Ex. P].

Two years later, Kolath, acting as President of Debtor, executed a Cognovit Promissory Note ("Note") and mortgage ("Mortgage") in favor of herself, individually, in the amount of $3,940,535.22. [*See* Doc. # 37, Ex. T; Doc. # 39, p. 5]. It is undisputed that Kolath provided no funds to Debtor in exchange for the Note and Mortgage at the time they were executed. [Doc. # 39, p. 5 (stating that Kolath "memorialized the indebtedness with the Debtor based on the payment of the Debtor's loans from the life insurance policy")].

In July 2012, the New York Court commenced a trial on the sole issue of Kolath's removal as executrix of her husband's estate. [Doc. # 37, Ex. U, p. 4]. After several days of testimony, the court granted the parties' request for additional discovery. The trial then resumed and concluded in December 2012. [*Id.*] The New York Court entered its Decision/Order on March 19, 2013, revoking the Letters Testamentary issued to Kolath. [*Id.* at 16]. After the conclusion of the trial and submission of post-trial memoranda, Kolath was convicted in federal court of harboring an illegal alien, an offense punishable by fine or imprisonment of not more than five years, or both. [*Id.*]. Because under New York law a felon may not serve as a fiduciary and may be removed without process, the court found that she was no longer qualified to act as executrix of her husband's estate. [*Id.* at 4-5]. However, the court stated that "because Ms. Kolath may appeal her conviction, and this Court having already concluded its trial on the issue of her removal," it would examine the facts set forth at trial to determine whether a case had been established for her removal irrespective of her conviction. [*Id.* at 5].

The New York Court then set forth the law regarding fiduciary powers and duties and discussed the testimony and facts presented at trial. [*Id.* at 5-8]. The court specifically addressed Kolath's argument that the life insurance proceeds belonged to her and that she "permitted a portion of the proceeds . . .

(approximately $3,900,000) to be paid to Citizens Bank," which amount Kolath characterized, as she does here, as a loan to Debtor secured by the Mortgage. [*Id.* at 8-9]. The court held as follows:

> If the proceeds of the life insurance policy belonged to Ms. Kolath and she voluntarily allowed a portion of "her" proceeds to be paid to Citizens Bank and she received a security interest in the motel in return for her loan, then her conduct would be considered self-dealing. A fiduciary cannot lend personal funds to an estate and take back a lien on estate property without a court order, which she did not have.
>
> If the proceeds of the life insurance policy did not belong to Ms. Kolath, then by the execution of the mortgage obligating the estate, she engaged in self-dealing, and she has attempted to remove approximately $3,900,000 from the estate for her own personal benefit. She has a duty of undivided loyalty to estate creditors and all estate beneficiaries, even if they are her children.
>
> . . . .
> It was patently improper for Ms. Kolath to execute a mortgage for her own benefit, thereby depriving the estate of its equity in the motel.

[*Id.* at 8-9]. The court found that "[Kolath's] self-dealing alone . . . requires her removal as executrix of the estate." [*Id.* at 16].

Kolath filed amended claim number 9-2 in the underlying bankruptcy case, asserting a claim in the amount of $5,469,884.39 and attaching the Note and Mortgage.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party.

*Id*.

In cases such as this, where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999). The fact that both parties simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under Rule 56 does not automatically entitle the opposing party to summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720 (1998).

## II. Kolath's Evidentiary Objections

In support of her motion for summary judgment, the Trustee has submitted her affidavit with numerous documents attached, many of which were obtained by her counsel in response to subpoenas and from third parties. [Doc. # 37]. Kolath objects to all of the attached documents except the publicly recorded mortgages at exhibits K and L, the mortgage releases at exhibits Q and R, the proof of claim at exhibit T, and the title report at exhibit X. The basis of her objections is that the Trustee does not have personal knowledge of those documents and cannot authenticate them and that they constitute hearsay.

The 2010 amendments to Rule 56 eliminated the unequivocal requirement that documents submitted in support of a summary judgment motion must be authenticated. The amended rule allows a party making or opposing a summary judgment motion to cite to materials in the record including, among other things, "depositions, documents, electronically stored information, affidavits or declarations . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c) then permits a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Courts have recognized that the objection contemplated under the amended Rule 56 is not that the material has not been submitted in admissible form, but that it *cannot* be. *See Martin v. Performance Boat Brokerage.com, LLC*, 973 F. Supp. 2d 820, 824 (W.D. Tenn. 2013); *Harden v. AlliedBarton Sec. Serv.,* No. 3:10–00779, 2013 WL 2467714, at *8, 2013 U.S. Dist. LEXIS 80277, *24 (M.D. Tenn. June 7, 2013); *Brown v. Siemens Healthcare Diagnostics, Inc.,* No. DKC 11-0769, 2012 WL 3136457 at *5, 2012 U.S. Dist. LEXIS 106569, *18 (D. Md. July 31, 2012).

Some of the documents at issue have been properly authenticated, as the Trustee responded to Kolath's objection by submitting the affidavit of one with knowledge regarding those documents. [*See* Doc.

# 46, Ex. 1]. As to the remaining documents, there is no suggestion that they cannot be authenticated. Thus, under amended Rule 56, the remaining documents are not excluded from consideration by the court based on a failure to authenticate.

Kolath also argues, without directing the court to any specific exhibit, that "almost every document" constitutes hearsay. The court will exclude from its consideration the email conversations included at exhibits N, O and S to the extent offered to prove the truth of the matters discussed in those conversations. Without being directed to what Kolath believes constitutes hearsay in the remaining documents, the court will not exclude the documents.

### III. Disallowance of Claim - 11 U.S.C. § 502(b)(1)

Section 502(b) provides, in relevant part, that if an objection to a claim is made

> the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that–
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

11 U.S.C. § 502(b)(1).

A properly executed and filed proof of claim constitutes "*prima facie* evidence of the validity and amount of the claim." Bankruptcy Rule 3001(f). When an objection is filed, the objecting party bears the initial burden of producing sufficient evidence to rebut the presumption of validity given to the claim. *In re Nelson,* 206 B.R. 869, 878 (Bankr. N.D. Ohio 1997). The burden then shifts to the claimant to prove the validity and amount of the claim by a preponderance of the evidence. *Id.* While the burden of going forward shifts during the claims objection process, the ultimate burden of persuasion is always on the claimant to prove the claimed entitlement. *In re Holm,* 931 F.2d 620, 623 (9th Cir. 1991).

In this case, Kolath has filed a properly executed proof of claim, which results in a rebuttable presumption of its validity. The Trustee's objections then challenge the validity of the claim by (1) asserting the collateral estoppel effect of the New York Court decision, which found Kolath lacked authority to execute the Note and Mortgage in favor of herself and (2) asserting, among other things, that she was not subrogated to the Bank's claims against Debtor and thus, that there was no consideration for the Note and Mortgage. Kolath counters that collateral estoppel cannot be applied to the New York Court's decision because there is no identity of issues and because the issue to be precluded was an alternative holding and not necessary to the final judgment. In addition, and underlying all of her remaining arguments on

summary judgment, Kolath contends that she should be equitably subrogated to the rights of the Bank because she paid the obligations owed to it by Debtor.

### A. Collateral Estoppel

The Trustee argues that Kolath's claim is barred in its entirety by reason of the collateral estoppel effect of the New York Court decision. Under 28 U.S.C. § 1738, the federal full faith and credit statute, a federal court must accord a state court judgment the same preclusive effect the judgment would have in state court. *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 703 (6th Cir. 1999). In determining whether the prior judgment should be given preclusive effect in a federal action, the federal court must apply the law of the state in which the prior judgment was rendered. *Id.* Thus, in this case, the court must apply New York issue preclusion principles

Under New York law, collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity. *Buechel v. Bain*, 766 N.E.2d 914, 919 (N.Y. Ct of App. 2001). The factors considered when determining whether to apply the doctrine are: "[f]irst, whether the identical issue was necessarily decided in the prior action or proceeding and is decisive of the present action, and second, whether the party who is attempting to relitigate the issue had a full and fair opportunity to contest it in the prior action or proceeding." *Howard v. Stature Elec., Inc.*, 986 N.E.2d 911, 913-14 (N.Y. Ct. of App. 2013). Notwithstanding the burdens set forth above for the claims objection process, a party asserting collateral estoppel has the burden of establishing the first factor, and the party against whom estoppel is sought has the burden of establishing the absence of the second factor. *Id.* at 914; *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, N.E.2d 634, 636 (N.Y. Ct. of App. 1990); *Blythe v. City of New York*, 963 F. Supp. 2d 158, 175 (E.D.N.Y. 2013).

In this case, only the first element is at issue as Kolath does not argue that she did not have a full and fair opportunity to contest the issues decided in the prior New York case. The issue raised by the Trustee in this case is the propriety of Kolath's execution of the Note and Mortgage to herself. Kolath argues in this case, as she did in the prior action, that she executed the Note and Mortgage to memorialize a loan to Debtor that occurred when she paid insurance proceeds to the Bank on Debtor's behalf. Thus, her authority to do so is an issue that is determinative of the validity of her claim asserted in this court. And her authority to do so was an issue directly addressed and ruled upon by the New York Court.

The New York Court found that Kolath engaged in impermissible self-dealing in executing the Note and Mortgage. [Pl. Ex. U, pp. 8-9]. Specifically, to the extent that the life insurance proceeds belonged to

8

her, she was not entitled to loan personal funds and take back a lien on Debtor's property without a court order, which she did not have. [Pl. Ex. U, pp. 8-9]. With respect to the $2,900,000 loan that was owed to the Bank and paid from the life insurance proceeds, the court found that the collateral assignment of the proceeds to the Bank was proper and that Kolath's attempt to secure a loan in that amount was "patently improper." [*Id.* at 9]. The court concluded that such self-dealing "alone" required her removal as executrix.

Kolath's argument that the issues are not identical because the issue before the New York Court was whether she was qualified to serve as an executrix of her deceased husband's estate while the issue in this proceeding is the validity of her claim is unavailing. What Kolath describes are the causes of action in each proceeding. In determining whether to apply the doctrine of collateral estoppel, the question is whether the *issue* decided in the prior action is the same as the issue to be decided in the present action, "whether or not the . . . causes of action are the same." *Ryan v. New York Tel. Co.,* 467 N.E.2d 487, 490 (1984).

Kolath also argues that the issue regarding her lack of authority to engage in the Note and Mortgage transaction with Debtor was not necessarily decided by the New York Court but was merely an alternative to her ineligibility due to her felony conviction as a ground for her removal as executrix. It is true that, generally, when a decision rests on two independent grounds, either of which could support it alone, neither ground is given preclusive effect for collateral estoppel purposes since neither can be said to have been essential to the judgment rendered. *Tydings v. Greenfield, Stein & Senior, LLP*, 897 N.E.2d 1044, 1046 (N.Y. Ct of App. 2008); *Malloy v. Trombley*, 405 N.E.2d 213, 214 (N.Y. Ct. of App. 1980). The justification for this rule is that "the determination in the alternative may not have been as carefully or as rigorously considered as it would have been if it had been necessary to the result, and in that sense it has some of the characteristics of dicta." *Malloy*, 405 N.E.2d at 215. However, New York courts recognize an exception to that rule where the issue was "actually litigated, squarely addressed and specifically decided." *Ross v. Med. Liab. Mut. Ins.*, 551 N.E.2d 1237 (N.Y. Ct. of App. 1990) (citing *Malloy*, 405 N.E.2d at 50-53); *Atl. Mut. Ins. Co. v. Lauria*, 739 N.Y.S.2d 394, 396 (N.Y. App. Div. 2002); *Peterkin v. Episcopal Soc. Servs. of New York, Inc.*, 808 N.Y.S.2d 31, 33 (N.Y. App. Div. 2005)

In *Malloy*, the lower court had dismissed the appellant's claim, giving issue preclusive effect to an alternative ground of a prior court's decision, which decision was rendered after a five-day trial. *Malloy*, N.E.2d at 214. The Court of Appeals affirmed the lower court's decision, finding that the care and attention devoted to the issue in the prior court's decision sapped of vitality any contention that the determination was not carefully and rigorously considered. *Id.* at 215. The Court of Appeals also noted that the prior decision had "validating authenticity" in that it was "prudent in the discharge of [the judge's] judicial responsibility,

9

following the five-day trial, to make full-blown findings" on both issues that were tried so as to avoid "the necessity of remittal for a new trial" in the event one issue is not upheld on appeal *Id.* at 216. The court stated that this "served a substantial operational purpose in the judicial process, thus negativing any conclusion that the trial court's resolution was casual or of any lesser quality than had the outcome of the trial depended solely on this issue." *Id.*

In this case, the impropriety of Kolath's Note and Mortgage transaction with Debtor was actually litigated at a trial lasting several days, and was squarely addressed and specifically decided by the New York Court. Although the court found that Kolath's felony conviction precluded her from acting as executrix of her husband's estate, it specifically stated that because Kolath may appeal her conviction and the court having concluded its trial on the issue of her removal as executrix, it would determine whether the facts set forth at trial established a case to remove her as executrix. The court then proceeded to set forth at length both the law and the facts relating to its determination regarding Kolath's self-dealing and lack of authority relating to the Note and Mortgage transaction. As in *Malloy,* both the New York Court's attention to the matter in its decision and the "substantial operational purpose" of his determination makes evident that, although an alternative finding, the determination was neither "casual [n]or of any lesser quality than had the outcome of the trial depended solely on this issue." *Id.*

Although Kolath relies upon the fact that she was a validly appointed officer and member of Debtor in arguing that she had authority to execute the Note and Mortgage, for the foregoing reasons, the court finds that the New York Court's decision precludes her argument. Regardless of any corporate authority, as a fiduciary of her husband's estate, she had no authority to enter into the Note and Mortgage transactions. Accordingly, as to Count I, Disallowance of Claim, the Trustee's motion will be granted and Kolath's motion will be denied. Kolath's claim will be disallowed in its entirety and the Note and Mortgage avoided.

### B. Want of Consideration

Notwithstanding the foregoing, the court also addresses the Trustee's argument that the Note and Mortgage are unenforceable under state law for want of consideration. A total lack of any valid consideration is a complete defense to enforcement of a promissory note and mortgage. *See Cohen & Co., CPAs v. Messina, CPA*, 24 Ohio App. 3d 22, 25 (1985) ("Consideration is an essential element necessary to the creation of a valid contract.); *Mancino v. Friedman*, 69 Ohio App. 2d 30, 35 (1980) (stating that want of consideration is well recognized as a valid and complete defense to a claim for enforcement of a promissory note").

According to Kolath, her use of the insurance proceeds to satisfy the notes owed to and mortgages

10

held by the Bank constitute consideration for the Note and Mortgage executed by her on behalf of Debtor and in favor of herself. This contention is based upon her argument that, having paid the obligation owed by Debtor to the Bank, she should be equitably subrogated to the Bank's position vis-a-vis Debtor. However, it is the Trustee's position that Kolath was not subrogated to the Bank's claims against Debtor and thus, that there was no consideration given to support the Note and Mortgage. In support of her position, the Trustee offers the Guaranties executed by Kolath at or about the time the original notes and mortgages were executed in favor of the Bank. Pursuant to the express provisions of those Guaranties, Kolath waived her rights of subrogation. Kolath argues that the Guaranties were agreements between her and the Bank and, as such, do not limit her right to assert claims against Debtor.

The parties' arguments require the court to construe the waiver provisions at issue in the Guaranties, which are identical in both Guaranties. Under Ohio law, which is the law governing the Guaranties, "a guaranty is construed like a contract." *U.S. Bank N.A. v. Green Meadow SWS LLC*, 2014-Ohio-738, 9 N.E.3d 433, 441 (Ohio App. 2014). If its terms are clear and unambiguous, a court may not construe it to have another meaning. *Id.* Contractual language is ambiguous "where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations. But there is no ambiguity if the subject language's meaning can be determined by considering the language in the context of other contractual language." *EnQuip Technologies Grp. v. Tycon Technoglass*, 2012-Ohio-6181, 986 N.E.2d 469, 475 (2012) (internal citations omitted).

Applying these principles, the court finds no ambiguity in the waiver provisions of the Guaranties. The Trustee directs the court to paragraph fifteen of both Guaranties, which provides: "Guarantor waives its rights of subrogation, reimbursement, indemnification, and contribution, and any other rights and defenses that are or may become available to the Guarantor." [Doc. # 46, Campbell Aff., Exs. C, ¶ 15 & F, ¶ 15]. Although that provision does not specifically name Debtor as a party against whom Kolath was waiving any rights, the waiver of her rights of subrogation is grouped with the waiver of other rights in that provision, such as indemnification and contribution, that would seem to apply solely to another party jointly liable to the Bank, as was Debtor, and not to the Bank itself. Nevertheless, to the extent that any ambiguity exists with respect to paragraph fifteen, paragraph twenty-one of the Guaranties is clear and unambiguous. That provision specifically states that Kolath waived "any and all claims, rights or remedies . . . against Obligor," a term defined in the Guaranties to include Debtor, "that arise in connection with this Guaranty and/or the performance by Guarantor hereunder, including without limitation any claim, remedy or right of subrogation . . . whether or not such claim, right or remedy arises in equity, under contract, by statute,

11

under common law or otherwise." [*Id.* at Exs. C, ¶ 21 & F, ¶ 21]. The court finds Kolath clearly and unambiguously waived the ability to assert any right of subrogation, equitable or otherwise, against Debtor. Kolath's waiver is enforceable under Ohio law. *Cf. Green Meadow SWS LLC*, 9 N.E.3d at 441 (finding a guaranty may provide that a party waives any potential defenses against enforcement of the guaranty); *Fausz v. Gioia*, 2006-Ohio-2487, 2006 WL 1363893, 2006 Ohio App. LEXIS 2353 (Ohio App. May 19, 2006) (enforcing waiver of rights of contribution against co-guarantor).

In light of the foregoing, the Trustee has met her burden of producing sufficient evidence to rebut the presumption of validity afforded Kolath's claim as a result of her properly filing a proof of claim. Given Kolath's waiver of any right of subrogation and the fact that equitable subrogation is the only basis advanced by her for finding consideration for the Note and Mortgage, Kolath has failed to meet her burden of proving the validity of her claim, and the Trustee has succeeded in demonstrating the absence of a genuine issue for trial regarding the lack of consideration for the Note and Mortgage. Because the lack of any valid consideration is a complete defense to enforcement of the Note and Mortgage, it is also a basis for granting the Trustee's motion and denying Kolath's motion for summary judgment regarding disallowance of Kolath's claim.

Granting the Trustee's motion as to Count I, Disallowance of Claim, entitles the Trustee to all of the relief requested in her complaint, namely disallowance of Kolath's claim and avoidance of the Mortgage. Therefore, the court need not address the parties' motions relating to the Trustee's remaining claims, all of which seek avoidance of the Note and Mortgage on various other legal theories. The parties' motions as to those claims will be denied as moot.

**THEREFORE,** for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the Trustee's Motion for Summary Judgment [Doc. # 36] be, and hereby is, **GRANTED** as to Count I, Disallowance of Claim, and **DENIED as moot** as to Counts II through VII; and

**IT IS FURTHER ORDERED** that Defendant Annie Kolath's Motion for Summary Judgment [Doc. # 39] be, and hereby is, **DENIED** on its merits as to Count I, Disallowance of Claim, and **DENIED as moot** as to Counts II through VII.

The court will enter a separate judgment in accordance with this Memorandum of Decision and Order.

###